Nathan R. Sobel, S.
The executors have requested construction of several provisions of Mrs. Volckening’s will admitted to probate in 1969.

I

The principal problem concerns the meaning of the tax clause. Since the bulk of the estate consists of stock in a family corporation, construction of the tax clause in turn may require a section 303 Internal Revenue Code stock redemption to meet the tax obligation.
In this State the statutory tax apportionment rule (EPTL 2-1.8) is “ burden-on-the-recipient ”. Testator may of course make an ‘ ‘ otherwise direction ’ ’. The common otherwise direction is “ burden-on-the-residuary ”.
We consider what Mrs. Volckening provided in her will: ‘ ‘ second : I do hereby authorize and direct that all State and Federal Estate and/or Inheritance taxes shall be paid out of my estate and the same shall not be chargeable to or paid by any devisee or legatee herein named.”
*131 The provision is construed by the court as an otherwise direction. Further it is construed as a direction to pay the taxes out of the residuary. No extended discussion is necessary since the provision is meaningless if otherwise construed. Meaningless because of necessity estate taxes must be paid by the estate: what is obviously meant is the residuary or general estate. Meaningless because legatees and devisees include residuary legatees : what is meant is that estate taxes shall not be chargeable to any devisee or legatee other than the residuary legatees. (See Matter of Jaret, 44 Misc 2d 262, affd. 24 A D 2d 479, affd. 17 N Y 2d 450; Matter of Kindermann, 21 N Y 2d 790; Matter of Pepper, 307 N. Y. 242; Matter of Bellinger, 27 N Y 2d 873 ; Matter of Chodikoff, 50 Misc 2d 86; Matter of Atkinson, 4 Misc 2d 992; Matter of Lemmerman, 199 Misc. 49.)

II

Although estate taxes have not been finally determined, the executors estimate these will be approximately $983,000. They estimate that the residuary after debts, funeral and administration expenses will be approximately $589,000. There will be a resulting Federal and State estate tax deficit of $394,000. The executors ask “ How should estate taxes that are unpaid after the residuary estate is exhausted be allocated? ”.
As noted the statutory rule of EPTL 2-1.8 is ‘£ burden-on-the-recipients ”. But Mrs. Yolckening made an otherwise direction of £ ‘ burden-on-the-residuary ’ ’. The otherwise direction is effective but only to the extent that it can be effectuated. To the extent that the residuary is insufficient the statutory rule of ££ burden-on-the-recipients ” must be substituted. (Matter of King, 6 Misc 2d 922 and cases cited; Matter of Falconer, 138 N. Y. S. 2d 666; Matter of Taylor, 116 N. Y. S. 2d 314; Matter of St. George, 61 Misc 2d 749, 755-756; Matter of Goldman, 4 Misc 2d 31; Matter of Zimtbaum, 206 Misc. 432; cf. Matter of Searles, 82 N. Y. S. 2d 219, 226.)
This principle has heretofore been fully accepted. It is placed in question by a new statute EPTL 13-1.3 (subd. [c]). The new statute is an ££ abatement ” statute effective September 1, 1967. Before that enactment, estate taxes alone could not cause an abatement. A tax ££ apportionment ” statute (EPTL 2-1.8) directed apportionment across the board against residuary, general and specific dispositions. Even when there was an otherwise direction of burden-on-the-residuary and a tax deficit resulted, the statute required apportionment proportionately against the remaining dispositions.
*132 While we had no general abatement statute prior to EPTL 13-1.3 (cf. Decedent Estate Law, § 47-d) decisional law governed abatement (Duck v. McGrath, 160 App. Div. 482, affd. 212 N. Y. 600; Matter of Smallman, 138 Misc. 889). Abatement was required when the general assets of the estate were insufficient to pay debts, funeral and administration expenses and in consequence insufficient to pay other dispositions in the will in full (Meyer v. Gahen, 111 N. Y. 270). Estate taxes were never regarded as an administration expense (see SOPA 1811, 2110, 2213, 2307; cf. SOPA 2002-2008) since a separate statute provided how these were to be apportioned.
New EPTL 13-1.3 for the first time includes estate taxes with debts, funeral and administration expenses and labels these collectively “ estate obligations ”. The statute then provides for sequential abatement (not apportionment) ‘ ‘ whenever such property [estate assets] is insufficient to satisfy both the estate obligations — and all dispositions under the will ’ ’. The sequence of abatement required is (1) intestate property; (2) residuary dispositions; (3) general dispositions; and (4) specific
dispositions.
The new statute is poorly drafted. It was obviously copied from EPTL 12-1.2, a statute purposed to give to unpaid creditors a remedy by “ action ” against the beneficiaries of an estate — first against intestate assets, then residuary legatees etc. When an ‘ ‘ abatement ’ ’ becomes necessary there will be no residuary dispositions left and in view of the abolition of the ‘ ‘ no residue of a residue ’ ’ rule there will be no intestate share not disposed of by will. What the new statute requires therefore is the abatement of general dispositions before specific dispositions.
If the statute means what it says with respect to the inclusion of estate taxes as estate obligations, then the new statute simply cannot be reconciled with the apportionment statute (EPTL 2-1.8) which requires tax apportionment across the board without priority among dispositions.
The contention that section 13-1.3, not 2-1.8, should be applied to a tax deficit after exhaustion of the residuary is rejected. It is basically unfair and not consistent with the intention of most testators. There is no supporting study of section 13-1.3 of the Commission on Estates which recommended it and there is no certainty that any change was intended.
However, the problem need not concern the executors for two reasons:
1. All dispositions in Mrs. Volckening’s will are general. There are no specific dispositions as all parties assume. Tes *133 tatrix owned 80% of the stock of Volckening, Inc. a family corporation. As noted the stock was the bulk of the estate. She gave (par? 8) 10% of the stock to two nephews and gave the balance to the paragraph 9 trusts. The fact that the dispositions together comprise all the stock owned by testatrix does not make the disposition specific. She desired the business to be continued. She naturally disposed of all of her stock. Surely if the business had been liquidated before death, she would not and could not have intended an ademption of the trusts for two of her three daughters. (Tifft v. Porter, 8 N. Y. 516; Matter of Rood, 59 Misc 2d 619.)
2. Abatement is required when no other intent is expressed in the will, (see EPTL 13-1.3, subd. [d].) Mrs. Volckening provided for her three daughters by creating separate trusts designed to provide equal income for each. Any abatement of one of the trusts and not the others would be contrary to her general testamentary intent readily evident in the will. (Matter of St. George, 61 Misc 2d 749; Matter of Lotsch, 59 Misc 2d 883; Matter of Smallman, 138 Misc. 889, 892, supra.)

III

The $12,000 of dispositions in paragraph Fourth are dispositions for charitable purposes. Under EPTL 2-1.8 (subd. [c], par. [2]) such dispositions are not taxable and in consequence may not be burdened with any part of the estate tax deficit. (Matter of Tropp, 67 Misc 2d 819; Matter of Childs, 63 Misc 2d 470; Matter of Michaels, 7 Misc 2d 439; Matter of Hayes, 263 N. Y. 219; Matter of Durbrow, 245 N. Y. 469.)

IV

The paragraph 6 (Wolfer) trust must bear its proportionate share of the estate tax deficit. That share is to be charged solely against the trust principal of $400,000 (EPTL 2-1.8, subd. [b]).
The initial payment of $15,000, the annual payments of $12,500 and the periodic payments of $15,000 every five years are to be paid out of income of the trust corpus reduced by its share of the tax deficit. If in consequence of the reduction of the corpus, income is insufficient then the payments are to be made out of principal as directed by Mrs. Volckening.
We deal only briefly with the contention that Mrs. Wolfer is a beneficiary of a common-law annuity (see Matter of Tracy, 179 N". Y. 501) and not an income beneficiary. Clearly she is the latter. (Booth v. Ammerman, 4 Bradf. 129, 133; Matter of Brown, 65 N. Y. S. 2d 624; Matter of Provot, 188 Misc. 802; Matter of Thomas, 197 Misc. 552, 554; Matter of Sprong, 237 *134 N. Y. S. 2d 372.) Other cited cases are distinguishable. (Matter of Graczyk, 66 N. Y. S. 2d 750 ; Matter of Clark, 54 Misc 2d 1015, 1022-1023; Matter of Mitchell, 30 Misc 2d 781, 783; Matter of Brown, 25 Misc 2d 656.) The main distinction is that Mrs. Volckening intended a trust for each of her"* three children and provided substantially equal income from each. She did not intend that Mrs. Wolfer receive an annuity and the others trust income.
It is observed that in the Wolfer trust there is no direction to accumulate income nor any disposition of income so accumulated.
There is however an implied direction that insofar as necessary income should be accumulated to meet the periodic $15,000 payments every five years. In this latter regard, in this particular trust and because of the new ‘1 throwback ’ ’ rules, this court would authorize the payment of the $15,000 income in installments of $3,000 to be added to the $12,500 annually. The executors may in their discretion include such a provision in the decree.
In the absence of a direction to accumulate or a disposition of accumulated income, the executor-trustees request advice concerning the ultimate distribution of accumulated income. The court does not wish to make that determination at the present time without some knowledge of the extent of income which will be accumulated. It is simply noted that EPTL 9-2.3 provides that in a case such as this accumulated income passes to the persons ‘ ‘ presumptively entitled to the next eventual estate”. The remaindermen are Mrs. Wolfer’s children. As this court observed in Matter of Schoenborn (N. Y. L. J., June 10, 1971, p. 18, col. 8) such income is presently payable to Mrs. Wolfer’s children and it does not matter that subsequent events may cause the income to be paid to additional children or even diverted to other beneficiaries. (Matter of Crossman, 113 N. Y. 503; Matter of Shupack, 158 Misc. 873.)
For the foregoing reasons as well as to avoid “ throwback ” consequences it may be desirable to pay the excess income presently to Mrs. Wolfer’s children via Mrs. Wolfer as guardian. The court will entertain and grant such a request whenever presented.

V

The paragraph 9th, Schneider-Spencer Trust, is a discretionary trust. The income received is to be paid to the income beneficiaries in the sole discretion of the trustees subject of course to direction from the court if income is unreasonably withheld. (3 Scott, Trusts [3d ed.], § 187.) By creating a *135 discretionary trust, Mrs. Volckening impliedly directed that income reasonably withheld be accumulated.
The executor-trustees request advice concerning the ultimate distribution of accumulated income. In view of the nature of the corpus of the trust, dependent as it is for income on stock dividends, the court gratuitously but with respect suggests that many problems would be avoided if all income is currently distributed. The court’s answer however is that it will not presently give such advice for the reason that there may not be any income to distribute or accumulate.
It is observed that it is not so clear as the executors suggest that EPTL 9-2.3 is ever applicable to a discretionary trust for in a sense the grant of authority to trustees to withhold income is a direction to accumulate. The statute may not be applicable where such a direction is made albeit only impliedly. As the executor-trustees observe, the income beneficiaries are also the remaindermen presumptively entitled to the next eventual estate and currently entitled to accumulated income. The statute is mandatory and if so applied contradicts the discretionary power in the trustees to withhold income. Even without advice and direction, the court is confident that the trustees for practical as well as income tax reasons will decide to distribute all income currently or reasonably so.
For good reason this court need not decide whether the VolekNu-Matic stock (unlike the Volckening stock) was part of a general or specific disposition.
Ademption of a disposition unless ademption by extinction {Matter of Wright, 7 N V 2d 365) depends more on the intention of testator than the labelling of the disposition. (See Matter of Kotcher, N. Y. L. J., Jan. 19,1970, p. 15, col. 8.) Mrs. Volckening clearly intended that the Volck-Nu-Matic stock be included in the paragraph 9th trust. In that case, the liquidating dividend should be so included. The family corporation was liquidated during Mrs. Volckening’s lifetime. After her death the liquidating dividend was received by the estate executors. If there had been a stock split or stock dividend the paragraph 9th trust would have been entitled to the benefit irrespective of whether the disposition was general or specific. A liquidating dividend is a partial return of capital. It should be treated as a reverse stock split, the dividend substituting for the stock. (Matter of Schimenti, 42 Misc 2d 983; Matter of Bradley, 38 Misc 2d 945; Matter of Howard, 46 Misc. 204; Matter of Morris, 36 Misc 2d 1094.) This conclusion is reached without consideration of the tax treatment of the corporate dissolution by the decedent or on her behalf by the estate.
*136 The foregoing construction of the several issues appears to be in accord with Mrs. Volckening’s intention. If the executor-trustees are not in accord, they may request a conference. Otherwise settle decree.